IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| J & J SPORTS PRODUCTIONS, INCORPORATED, | : | Case No. 3:12 CV 1873 |
| Plaintiff, | : | |
| v. | : | |
| KSD, INCORPORATED, *individually and as the* | : | MEMORANDUM AND ORDER |
| *alter ego of Six Pack Bar & Grill, et al.*, | : | |
| Defendants. | | |

## I. INTRODUCTION

The parties have consented to have the undersigned Magistrate enter final judgment in this anti-piracy case arising under the Communications Act of 1934, codified at 47 U. S.C. § 605; the Cable Communications Policy Act, codified at 47 U.S.C. § 553 as amended, and a state law prohibition against conversion. Pending are cross-Motions for Summary Judgment, Defendant's Motion to Dismiss and Response to Plaintiff's Motion for Summary Judgment and Plaintiff's Reply Brief (Docket Nos. 26, 38 and 40). For the reasons that follow, the Magistrate denies the Motion to Dismiss and stays disposition of the cross-Motions for Summary Judgment pending joinder of a party-plaintiff and the close of any extended discovery period.

## II.  THE FACTS.

Top Rank, Incorporated (Top Rank), a Nevada corporation, is a boxing promoter that owned the copyright to Manny Pacquiao v. Shane Mosley, WBO Welterweight Championship Fight Program (Program) that was closed-circuit telecast nationwide on May 7, 2011.

Plaintiff, a California corporation whose principal place of business is in South Pasadena, California, marketed and licensed commercial exhibitions of this pay-per-view prizefight event.  By and through its president, Joseph Gagliardi, Plaintiff obtained the exclusive commercial broadcast rights to the Program and certain undercard bouts effective January 10, 2011.  Pursuant to the Close Circuit Television License Agreement, the event was legally available to commercial establishments only through a sub-licensing agreement with Plaintiff (Docket No. 26-1, ¶ 3; pp. 15-20 of 22).  To prevent unauthorized interception or receipt of the Program, the interstate satellite transmission of the Event was electronically coded or scrambled and broadcast of the Program was not available to or intended for the general public (Docket No. 16, § 9).  Mr. Gagliardi averred that to the best of his knowledge, there was no way to accidentally, mistakenly or innocently intercept the Program (Docket No. 26, ¶ 9; Docket No. 26-1, ¶ 6).  To "pirate" the Program, an establishment would have to use electronic decoding equipment to obtain the satellite coordinates necessary to expropriate the signal (Docket No. 26-1, ¶ 9A, B, C, D, E).

Defendant Kypros Diacou, the sole shareholder of Defendant KSD, an Ohio corporation, and Defendant KSD are owners and operators of Defendant Six Pack Bar & Grill (Six Pack), a sports bar, which has a principal place of business at 3223 West Sylvania, Toledo, Ohio (Docket No. 1, ¶s 7 & 8; Www2.sos.state.oh.us.; Docket No. 38, p. 6 of 18).  Neither Defendant Diacou, KSD nor Six Pack purchased a sub-licensing agreement to broadcast the fight or any of the undercard bouts from Plaintiff

(Docket No. 26-1, ¶ 3).

Prior to Saturday, April 30, 2011, Jackie Cortez, Director of Investigations for the Law Office of Thomas P. Riley, disseminated a "save the date" notice to piracy investigators to locate offenders of the anti-piracy regulations during the Program (Docket No. 37, pp. 91 of 99).  Robert J. Patterson obtained a request from his stepfather who was employed as an investigator for M.B. Scurto & Associates, to visit Defendant Six Pack on May 7, 2011, observe his surroundings and make an affidavit containing the details of what he saw (Docket No.  35, pp. 18-20 of 41).  Mr. Patterson and his sister Tara averred that at approximately 10:45 P.M., they observed the unlawful broadcast of the undercard fight between Jorge Arce and Wilfredo Vasquez, Jr., on all of the televisions in Defendant Six Pack (Docket No. 26-1, pp. 9-10 of 22; Docket No. 35, pp. 19, 21-22 of 41).

Mr. Gagliardi claims that Defendants' unauthorized interception of the signal also was prohibited under 47 U. S. C. § 605 and 47 U. S. C. § 553.  For a commercial establishment with a maximum fire code occupancy of 135 people, the commercial sublicense fee would have been $6,200 (Docket No. 26-1, ¶ 8; p. 22 of 22).  Plaintiff seeks an award of statutory damages exceeding $100,000, the costs of the suit and attorney fees.

### PROCEDURAL BACKGROUND.

Plaintiff filed a Complaint for damages against Defendants Diacou and KSD and a Corporate Disclosure Statement and Defendants Diacou and KSD filed an Answer (Docket Nos. 1, 2 and 8).  Plaintiff filed a Motion for Summary Judgment in which it asserts entitlement to judgment as a matter of law for reasons that

(1)    Defendants unlawfully intercepted and broadcast the program in their commercial establishment; and
(2)    Defendants are liable for statutory and enhanced damages as permitted under 42 U.S.C. § 605 and attorney fees and costs (Docket No. 26).

3

Defendants filed a Motion to Dismiss Plaintiff's Complaint for failing to join a necessary party.

Defendants' Motion for Summary Judgment is based on two claims:

(1)     Plaintiff failed to establish any basis for asserting liability against Defendant Diacou.
(2)     Plaintiff erroneously relied on the Patterson Affidavit (Docket No. 38).

### ANALYSIS.

The Magistrate must necessarily rule on the Motion to Dismiss first as the remaining questions

presented require consideration of facts and resolution of legal principles that may bear on the essential

relationship between the parties and the adjudication on the merits.

Fed. R. Civ. P. 12(b) (7) provides for dismissal for "failure to join a party under Rule 19."

Whenever feasible, the persons materially interested in the subject of any action should be joined as

parties so that they may be heard and a complete disposition made. *Glancy v. Taubman Centers,*

*Incorporated*, 373 F.3d 656, 664 (6th Cir.2004).  FED. R. CIV. P. 19 addresses this problem by providing

guidance for the joinder of persons needed for just adjudication.  *Id.*  The guidelines determine when

it is proper to dismiss a case because a person or entity has an interest in the outcome of the litigation

that could be impaired in the absence of that person or entity, and when joinder of the person or entity

will deprive the court of subject matter jurisdiction.  *Id.*  The "essence of Rule 19 is to balance the

rights of all those whose interests are involved in the action."  *Id*.

Courts in this Circuit use the following process for determining joinder under Rule 19.  *7172*

*Columbia, Incorporated v. Ventas, Incorporated,*  2013 WL 3822120, *1 (N.D.Ohio,2013) (*citing*

*United States v. City of Detroit*, 712 F.3d 925, 948 (6th Cir.2013) (citation omitted)).  The Court

examines whether the party is necessary pursuant to Rule 19(a).  *Id.* (*citing See* FED.R.CIV.P. 19(a)

(citation omitted).  If the absent party is deemed necessary under Rule 19(a), the Court next considers

the issues of personal jurisdiction and indispensability. *Id*. (*citing Keweenaw Bay Indian Community v. Michigan,* 11 F.3d 1341, 1345–1346 (6th Cir.1993)).  "If personal jurisdiction is present, the party *shall* be joined; however, in the absence of personal jurisdiction or if venue as to the joined party is improper, the party cannot properly be brought before the court." *Id.* (*citing Keweenaw*, 111 F. 3d at 1345-1346).  If the party cannot be part of the proceedings, the Court considers the factors in Rule 19(b) to determine if it "may proceed without the absent party or, to the contrary, must dismiss the case due to the indispensability of that party." *Id.* (*See* FED. R. CIV. P. 19(b) (citation omitted).  When conducting its analysis, the Court must be mindful that the rules should "not be applied in a rigid manner," but should be "governed by the practicalities of the individual case." *Id.* (*citing Keweenaw Bay,* 11 F. 3d at 1146).

In the instant case, joinder would not affect the Court's subject matter jurisdiction considering the diversity of the parties.  Plaintiff is a California corporation and Defendant is an Ohio corporation.  Adding Top Rank, a Nevada corporation, would not upset complete diversity found at 28 U. S. C. § 1332.  Critical to this analysis, however, is whether in Top Rank's absence, the Court can accord complete relief among existing parties.  To make that finding requires essentially interpreting the terms of the television license agreement between Top Rank and Plaintiff.

In determining which law to apply, the Magistrate considers that the applicable rules of interpretation are left to Ohio law since:  (1) the license agreement does not contain a forum selection clause; (2) Defendants are subject to personal jurisdiction in this Court; (3) the alleged injury took place in Ohio; (4) the place where the conduct causing the injury is in Ohio; and (5) neither party argues that there is another jurisdiction with more significant contacts.  Under Ohio law, when confronted with an issue such as the one before this Court, the intent of the parties will be given deference. *Eastham v.*

*Chesapeake Appalachia, L.L.C.*, 2014 WL 2535385 (6ᵗʰ Cir. 2014) (*citing Sunoco, Incorporated ® &*

*M) v. Toledo Edison Company*, 129 Ohio St.3d 397, 953 N.E.2d 285, 292 (Ohio 2011)).  To that end,

courts should examine the contract as a whole and presume that the intent of the parties is reflected in

the plain and ordinary meaning of the language used in the contract unless another meaning is clearly

apparent from the contents of the agreement.  *Id.*  When the language of a written contract is clear, a

court may look no further than the writing itself to find the intent of the parties.  *Id*.  Courts may

examine extrinsic evidence to ascertain the parties' intent only if the contract is ambiguous.  *Id.* (*citing*

*Shifrin v. Forest City Enterprises*, 64 Ohio St.3d 635, 597 N.E.2d 499, 501 (Ohio 1992)).  A contract

is ambiguous where it cannot be given a "definite legal meaning."  *Id.* (*citing Westfield Insurance*

*Company v. Galatis*, 100 Ohio St.3d 216, 797 N.E.2d 1256, 1261 (Ohio 2003)).  Stated differently,

"[a]mbiguity exists only when a provision at issue is susceptible of more than one reasonable

interpretation."  *Id.* (*citing Lager v. Miller–Gonzales*, 120 Ohio St.3d 47, 896 N.E.2d 666, 669 (Ohio

2008); *see also* 11 WILLISTON ON CONTRACTS § 30:5 (4ᵗʰ ed.)).

Top Rank and Plaintiff entered into a "CLOSED CIRCUIT TELEVISION LICENSE AGREEMENT" as

of January 10, 2011.  The "Anti-Piracy" terms at issue in this case read as follows:

> Promoter (Top Rank) and Licensee (Plaintiff), **acting jointly** (emphasis added), shall
> have the right to commence or settle any claim or litigation arising out of the alleged
> piracy, use or proposed use of the telecast in the Territory.  Promoter and Licensee shall
> notify each other in writing and shall consult with each other and mutually agree before
> commencing or settling any such claim or litigation in the Territory.  Any damages,
> whether statutory, compensatory, punitive or otherwise, which Promoter or Licensee
> may recover from the theft, piracy, copying, duplication, unauthorized exhibition or
> transmission of the Event in the Territory, after payment of reasonable legal fees and
> disbursements, shall constitute gross revenues to be shared by Promoter and License as
> provided in Paragraph 1 of this agreement.  Licensee shall advance all required legal
> fees and disbursements, subject to recoupment from any applicable recovery. . . .

Defendants have isolated the phrase "acting jointly" as an indicator that the case should be

6

dismissed for the reason that Top Rank is a necessary and indispensable party to the litigation.  The Magistrate finds that the terms "acting jointly" are not meaningless or superfluous.  The plain and ordinary meaning of this language is clearly apparent and unambiguous.  Top Rank **and** Plaintiff have the right to jointly commence any claim arising out of the alleged piracy use or proposed use.  The next line provides that Top Rank and Plaintiff **mus**t arrive at a mutual agreement before commencing or settling any such claim or litigation in the Territory.  Consequently, this Court cannot accord complete relief to all parties absent Top Rank's presence in the lawsuit.

FED. R. CIV. P. 21 provides that misjoinder of parties is not a  ground for dismissing an action.  Therefore, misjoinder of parties is not a defense to this action.  The rules further provide that a party may be added or dropped by order of the court on its own initiative or on motion by any party.  The Magistrate finds that the appropriate resolution of the misjoinder issue is provided by FED. R. CIV. P. 19.  Top Rank is indispensable to the right to commence a lawsuit and Rule 19(a) requires that the Magistrate order that Top Rank be made a party.  Only if Top Rank cannot be joined should the court proceed to consider whether justice can be rendered in  Top Rank's absence or whether dismissal is an appropriate remedy.

CONCLUSION.

For the foregoing reasons, the Magistrate denies the Motion to Dismiss subject to the following

conditions:

(1)     Plaintiff shall join Top Rank as a party-plaintiff within 15 days;


(2)     Disposition of the Motions for Summary Judgment will be stayed pending any
        amendments to the pleadings and completion of any additional discovery.

(3)     A telephone status conference will be held on Friday, August 1, 2014 at 11:30 a.m.

**IT IS SO ORDERED**.


                                        /s/Vernelis K. Armstrong
                                        United States Magistrate Judge

Date:   June 20, 2014