IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **J & J SPORTS PRODUCTIONS, INCORPORATED**, | : | Case No. 3:12 CV 1873 |
| Plaintiff, | : | |
| v. | : | |
| **KSD, INCORPORATED**, *individually and as the alter ego of Six Pack Bar & Grill, et al.*, | : | **MEMORANDUM AND ORDER** |
| Defendants. | : | |

## I. INTRODUCTION

The parties have consented to have the undersigned Magistrate Judge enter final judgment in this alleged piracy case arising under the Federal Communications Act of 1934, 47 U.S.C. § 605; the Cable Communications Policy Act of 1984, 47 U.S.C. § 553, and the Ohio common law of conversion. Pending are cross-Motions for Summary Judgment (Docket Nos. 26 and 38), and Plaintiff's Reply (Docket No. 40). For the reasons that follow, the Magistrate denies Plaintiff's Motion for Summary Judgment and Defendants' Motion for Summary Judgment.

## II. THE PARTIES.

Joseph Gagliardi is the president and owner of Plaintiff, a sports events' management company based in California (Docket No. 1, ¶ 6).

Defendant Kypros Diacou is the sole shareholder of Defendant KSD, an Ohio corporation.

Defendants Diacou and KSD are owners of a commercial establishment, the Six Pack Bar & Grill (Six Pack), a sports bar which has a principal place of business at 3223 West Sylvania, Toledo, Ohio (Docket No. 1, ¶s 7 & 8; Www2.sos.state.oh.us.; Docket No. 38, p. 6 of 18).

### III. FACTUAL AND PROCEDURAL BACKGROUNDS.

Top Rank, Incorporated, a Nevada-based boxing promotion company, owns the copyright to the Manny Pacquiao versus Shane Mosley, WBO Welterweight Championship Fight Program (the Fight) and the undercard bouts that were broadcast on May 7, 2011. Plaintiff owns the exclusive nationwide commercial distribution rights to the Fight obtained through a licensing agreement with Top Rank (Docket No. 26-1, ¶ 1). Under the agreement with Top Rank, Plaintiff was authorized to enter into contracts with third parties for commercial exhibitions of the Fight (Docket No. 26-1, ¶ 3). The parties agree that no sublicensing agreement existed between Plaintiff and Defendants.

Having experienced a decline in sales with the advent of pay-per-view service, Joseph Gagliardi changed the company's strategy and hired investigators to help build evidence for lawsuits involving the infringement of its exclusive right to distribute and display the Fight (Docket No. 26-1, ¶s 4, 5). To that end, Robert J. Patterson, an investigator for M.B. Scurto & Associates, visited Defendant Six Pack on May 7, 2011, at approximately 10:45 P.M., after which he completed an affidavit. The crux of Mr. Patterson's affidavit is that during the 45 minutes he was in Six Pack, the undercard bout featuring Jorge Arce and Wilfredo Vazquez was being broadcast simultaneously on eight televisions mounted overhead behind the bar (Docket No. 26-1, p. 9-10 of 22).

Defendant Diacou was not at Six Pack on May 7, 2011; however, he conducted an investigation and averred that neither the undercard Vasquez fight nor the Fight was broadcast at Six Pack (Docket No. 38-2, ¶s 5-7). Costas Christides, a Six Pack patron, concurred, averring that

on the evening of May 7, 2011, between the hours of 10:00 P.M., and midnight, there was no broadcast of "any UFO pay-per-view fight" at the Six Pack (Docket No. 38-3, ¶ 2).

On July 19, 2012, Plaintiff filed a Complaint against Defendants, alleging that they intercepted an encrypted signal and divulged the communication arising from the interception. Plaintiff contends that Defendants' actions violate the Communications Act of 1934; the Cable Communications Act of 1984, as well as the Ohio law of conversion.  Defendants responded, generally denying the allegations and asserting several affirmative defenses including allegations that (1) Plaintiff failed to state a claim upon which relief can be granted; (2) Plaintiff's claims are barred by the doctrine of laches and waiver; and (3) Plaintiff's claims are barred by the doctrine of unclean hands (Docket No. 8, p. 3 of 4).

Both parties seek summary judgment, asserting what they consider undisputed facts that entitle them to judgment because of existing law.  Plaintiff does not seek summary judgment on the issue of damages on its claim of conversion.  Rather, Plaintiff asserts entitlement to judgment as a matter of law for reasons that Defendants unlawfully intercepted and broadcast the program in their commercial establishment, a violation of 47 U.S.C. § 605; and Defendants are liable for statutory and enhanced damages as permitted under 47 U.S.C. § 553, attorney fees and costs (Docket No. 26).

Defendants, in their brief, oppose Plaintiff's Motion for Summary Judgment, seek dismissal of Plaintiff's complaint and request partial Summary Judgment.  Defendants make the following arguments:  (1) genuine issues of material facts exist to preclude summary judgment in favor of Plaintiff, (2) Plaintiff is not the Real Party in Interest; therefore, the complaint should be dismissed and (3) Plaintiff failed to establish any basis for asserting liability against Defendant Diacou as an individual (Docket No. 38).

### IV. MOTION FOR SUMMARY JUDGMENT LEGAL STANDARD.

The standard of review applicable to motions for summary judgment is established by Federal Rule of Civil Procedure 56 and the associated case law. *Miller v. Transfreight, LLC*, 2013 WL 4039033, *1 (S.D.Ohio,2013). Rule 56 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* (*citing* FED.R.CIV.P. 56(c)). Alternatively, summary judgment is denied "[I]f there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* (*citing Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir.1992) (*quoting Anderson v. Liberty Lobby, Incorporated*, 106 S.Ct. 2505, 2511 (1986)). Thus, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* (*citing Celotex Corporation v. Catrett*, 106 S.Ct. 2548, 2552 (1986)).

The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at *2 (*citing Celotex*,106 S.Ct. at 2552-2553). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Id.* (*citing Anderson*, 106 S.Ct. at 2511 (*quoting* FED.R.CIV.P. 56(e)). Once the burden of production has shifted, the party opposing summary judgment cannot rest on its

pleadings or merely reassert its previous allegations. *Id.* It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Id.* (*citing Matsushita Electrical Industry Company, Limited v. Zenith Radio Corporation*, 106 S.Ct. 1348, 1355-1356 (1986)). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Id.* (*citing Celotex*, 106 S.Ct. at 2556).

In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in the favor of that party. *Id.* (*citing Anderson*, 106 S.Ct. at 2513-2514). If the parties present conflicting evidence, a court may not decide which evidence to believe by determining which parties' affiants are more credible. *Id.* (*citing* 10A Wright & Miller, FEDERAL PRACTICE AND PROCEDURE, § 2726. Credibility determinations must be left to the fact-finder. *Id.* (*citing* Wright & Miller, at § 2726).

Finally, in ruling on a motion for summary judgment, "[a] district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corporation v. Sponseller*, 889 F.2d 108, 111 (6th Cir.1989), *cert. denied*, 110 S.Ct. 1839 (1990). Thus, in determining whether a genuine issue of material fact exists on a particular issue, the court is entitled to rely upon the Rule 56 evidence specifically called to its attention by the parties. The Rule 56 evidence includes the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted. FED.R.CIV.P. 56(c).

## V. ANALYSIS OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff argues that no genuine issue of material fact exists regarding whether Defendants unlawfully intercepted and broadcast the program at their commercial establishment and therefore

5

Plaintiff is entitled to judgment as a matter of law.

### A.   LIABILITY UNDER 47 U.S.C. SECTION 605

Plaintiff argues that Defendants violated 47 U.S.C. § 605[1] by receiving and displaying the Fight without Plaintiff's authorization.  In general, Section 605 is a strict liability statute which prohibits the unauthorized interception of satellite television signals.  To prove a violation, Plaintiff need only show that the Fight was shown in Defendants' establishment without Plaintiff's authorization.

The affidavit of Joseph Gagliardi was presented as evidence of Plaintiff's exclusive rights to exhibit and distribute the Fight to commercial establishments in Ohio, and Defendants' failure to purchase the rights to display the Fight (Docket No. 26-1, ¶ 3).  Plaintiff's evidence also consists of a written affidavit of Robert Patterson, a private investigator, who is adamant that Defendants displayed the Fight on May 7, 2011, to an audience consisting of between 71 and 80 patrons (Docket

---

[1] 47 U.S.C. Section 605(a) provides the following:
Except as authorized by chapter 119, Title 18, no person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception, (1) to any person other than the addressee, his agent, or attorney, (2) to a person employed or authorized to forward such communication to its destination, (3) to proper accounting or distributing officers of the various communicating centers over which the communication may be passed, (4) to the master of a ship under whom he is serving, (5) in response to a subpoena issued by a court of competent jurisdiction, or (6) on demand of other lawful authority.  No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person.  No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.  No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.  This section shall not apply to the receiving, divulging, publishing, or utilizing the contents of any radio communication which is transmitted by any station for the use of the general public, which relates to ships, aircraft, vehicles, or persons in distress, or which is transmitted by an amateur radio station operator or by a citizens band radio operator.

No. 26-1, pp. 9-10 of 22).

In evaluating Plaintiff's Motion for Summary Judgment, the evidence must be viewed in the light most favorable to Defendants. In other words, the Magistrate must lend credence to the Defendants' interpretation of the disputed facts. Here, Defendants did not rest upon its mere allegations, but rather proffered countervailing evidence of sufficient probative force to show that Six Pack did not intercept or display any unauthorized communication. Defendant Diacou conducted his own investigation, reviewed available KSD books and records and conducted interviews with employees including but not limited to the bartender working that evening. He concluded that neither the undercard fight nor the Fight was broadcast at Six Pack on May 7, 2011 (Docket No. 38-2, ¶s 5-7). Costas Christides, a Six Pack patron, unequivocally contradicted Plaintiff's claims regarding May 7, 2011, stating that he was present at the Six Pack from 10:00 P.M. to midnight and no broadcast of any UFO pay-per-view fight was shown on the televisions that evening (Docket No. 38-3, ¶ 2).

Because Defendants were able to create a genuine issue of material fact for the jury, the Magistrate denies summary judgment. Furthermore, in the absence of a finding of liability, there is no basis for damages.

    **B.**    **LIABILITY UNDER 47 U.S.C. SECTION 553**

Plaintiff argues that Defendants violated 47 U.S.C. § 553 by receiving and displaying the Fight without Plaintiff's authorization.

The Cable Communications Policy Act of 1984, 47 U.S.C. § 553(a)(1)[2], makes it illegal to

---

[2]

    (a) Unauthorized interception or receipt or assistance in intercepting or receiving service; "assist in intercepting or receiving" defined

        (1)    No person shall intercept or receive or assist in intercepting or receiving any communications service

7

intercept or receive without authorization any communications service offered over a cable system. *J & J Sports Productions, Incorporated v. Fisher,* 2013 WL 4482405, *2 (S.D.Ohio,2013). Section 553 was designed to provide a remedial scheme for unauthorized reception of cable communications. By contrast Section 605 applies to cases where the end-user offender obtained a propriety broadcast by way of a satellite rather than cable television programming system. *Id.*

Under Section 553(c)(3)(A), a party may recover actual damages or, in the alternative, an award of statutory damages for all violations involved in the action in an amount not less than $250 but not greater than $10,000. *Id.* (*citing* 47 U.S.C. § 553(c)(3)(A)(I) and (ii)). Because there is no *mens rea* or *scienter* element for a violation of Section 553, intent is immaterial to liability. *Id.* (*citing Joe Hand Promotions, Inc. v. Easterling*, 2009 WL 1767579, at *4 (N.D.Ohio June 22, 2009)). However, where the court finds that the violation was committed willfully and for the purpose of commercial advantage or private financial gain, the court, in its discretion, may increase the award of damages, either actual or statutory, by an amount not more than $50,000. *Id.* (*citing* 47 U.S.C. § 553(c) (3)(B)). Similarly, the court may reduce the award of damages "[I]n any case where the court finds that the violator was not aware and had no reason to believe that his acts constituted a violation" of the law. *Id.* (*citing* 47 U.S.C. § 553(c)(3)(B) and (C)). Section 553 also provides for an award of costs and reasonable attorney fees. *Id.* (*citing* 47 U.S.C. § 553(c)(2)(C)). When a defendant is liable under both 42 U.S.C. § 605 and 47 U.S.C. § 553, the plaintiff may only recover under one section. *Id.*

---

offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law.
(2) For the purpose of this section, the term "assist in intercepting or receiving" shall include the manufacture or distribution of equipment intended by the manufacturer or distributor (as the case may be) for unauthorized reception of any communications service offered over a cable system in violation of subparagraph (1).

Plaintiff elected to pursue statutory damages under Section 605 (Docket No. 26, fn. 3). Accordingly, the Magistrate denies Plaintiff's Motion for Summary Judgment and damages request pursuant to Section 553.

### VI. ANALYSIS OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT/TO DISMISS

#### A. REAL PARTY IN INTEREST

Defendants claim that Plaintiff has not established its authority to bring this action or join a real party in interest. The Magistrate has already addressed this issue, finding that Plaintiff has standing to bring an action against Defendants for allegedly intercepting or receiving copyrighted communications without a sublicense and that Plaintiff is acting jointly with Top Rank through apparent notification, consultation and/or mutual agreement.

Defendants are not entitled to judgment as a matter of law as to this issue. The issue of whether Defendants unlawfully intercepted or received or assisted in intercepting or receiving any communication service offered by Plaintiff through Top Rank, is reserved for trial.

#### B. INDIVIDUAL LIABILITY OF DEFENDANT DIACOU.

The parties agree that Defendant KSD is a duly licensed Ohio corporation. Plaintiff asserts that in his capacity as the sole shareholder of KSD and its alter ego, Defendant Diacou is individually liable for any injury and damages resulting from the illegal broadcast. Defendants argue that Defendant Diacou, in his individual capacity, has no liability whatsoever for an alleged illegal broadcast.

The Supreme Court of Ohio acknowledged in *Belvedere Condominium Unit Owners' Association v. R.E. Roark Companies, Incorporated*, 67 Ohio St.3d 274, 287, 617 N.E.2d 1075 (Ohio, 1993), and more recently reaffirmed in *Dombroski v. WellPoint, Incorporated*, 119 Ohio

9

St.3d 506, 2008-Ohio-4827, 895 N.E.2d 538 (Ohio,2008), that the corporate form has been introduced for the convenience of the company in making contracts, in suing and being sued, and to preserve the limited liability of the stockholders, by distinguishing between the corporate debts and property of the company, and of the stockholders in their capacity as individuals.  *Minno v. Pro-Fab*, *Incorporated*, 121 Ohio St.3d 464, 466, 905 N.E.2d 613, 616 (Ohio,2009) (*citing Dombroski* at ¶ 16, *quoting State ex rel. Attorney General v. Standard Oil Company,* 49 Ohio St. 137, 177, 30 N.E. 279 (1892)).  A fundamental rule of corporate law is that normally shareholders are not liable for the debts of the corporation*.  Id.*

However, in certain circumstances the corporate form may be disregarded, and the corporate veil pierced, for the purpose of reaching the assets of the corporation's individual shareholders.  *Id*.  "Piercing the corporate veil" is "[t]he judicial act of imposing personal liability on otherwise immune corporate officers, directors, or shareholders for the corporation's wrongful acts." *Id.* (*citing* BLACK'S LAW DICTIONARY 1184 (8th Ed.2004)).  The corporate form may be disregarded and individual shareholders held liable for wrongs committed by the corporation when:

(1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own,
(2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud, [an illegal act, or a similarly unlawful act] against the person seeking to disregard the corporate entity, and
(3) injury or unjust loss resulted to the plaintiff from such control and wrong. *Id.* at 466-467, fn.1 (*citing Belvedere*, 67 Ohio St.3d 274, 617 N.E.2d 1075, at paragraph three of the syllabus, and as modified (bracketed language) by the syllabus in *Dombrosk*i, 119 Ohio St.3d 506, 2008-Ohio-4827, 895 N.E.2d 538).

A plaintiff's successful proof of each of the three elements will result in individual shareholders being held liable for corporate misdeeds because "it would be unjust to allow the shareholders to hide behind the fiction of the corporate entity." *Id.* at 466-467 (*citing Belvedere* at 287, 617 N.E.2d

1075).

The first element is a restatement of the alter-ego doctrine, which requires that plaintiff "show that the individual and the corporation are fundamentally indistinguishable." *Taylor Steel, Incorporated v. Keeton*, 417 F.3d 598, 605 (6th Cir. 2005). In deciding whether the company is an alter ego of the individual, Ohio courts consider such factors as:

   (1)   grossly inadequate capitalization,
   (2)   failure to observe corporate formalities,
   (3)   insolvency of the debtor corporation at the time the debt is incurred,
   (4)   shareholders holding themselves out as personally liable for certain corporate obligations,
   (5)   diversion of funds or other property of the company property for personal use,
   (6)   absence of corporate records, and
   (7)   the fact that the corporation was a mere facade for the operations of the dominant shareholder(s).

*Id.* (*citing LeRoux's Billyle Supper Club v. Ma*, 77 Ohio App.3d 417, 602 N.E.2d 685, 689 (Ohio App. 6 Dist.1991)). However, "because of the equitable nature of the veil-piercing doctrine, no list of factors can be exclusive or exhaustive." *Id.* (*citing Carter–Jones Lumber Company v. LTV Steel Company*, 237 F.3d 745, 749 (6thCir.2001) (applying Ohio law)).

Plaintiff argues that the applicable facts regarding piercing the corporate veil and subsequent discussion that Defendants KSD and Diacou are virtually indistinguishable. Plaintiff suggests that reasonable minds could certainly conclude that Defendant Diacou, creator, sole shareholder, president, general manager and employee, is the alter ego of the entity known as Defendant KSD.

Defendants suggest that Defendant KSD has free will of its own. The mere fact that Defendant Diacou's ownership overlaps his position as officer of the corporation is not sufficient evidence to demonstrate that he had absolute, complete and final authority over Defendant KSD such that the corporate veil should be pierced.

11

This Court is bound under *Belvedere* and its progeny cited herein to consider whether there is corporate regularity in Defendant Diacou's ownership interest of Defendant KSD. Defendants have failed to present facts which either directly or implicitly demonstrate that Defendant Diacou and Defendant KSD are fundamentally distinguishable and thus Defendant Diacou is not personally liable for Defendant KSD's alleged wrongful acts. The Magistrate denies summary judgment because there is a genuine question of material fact as to whether Defendant Diacou is the alter ego of Defendant KSD. At trial, the Court will consider the general standards suggested by the *Belvedere* case to determine the propriety of piercing the corporate veil.

### C. ASSESSMENT OF CREDIBILITY.

Defendants argue that assessments of credibility and choices between conflicting versions of the events are matters for a jury, not the Court on summary judgment. Any weighing of the evidence is the prerogative of the finder of fact, not the exercise for the Court on summary judgment.

Plaintiff suggests that credibility determinations do not factor into this analysis since there is no *mens rea* or *scienter* elements required to show a violation of 47 U.S.C. § 605; consequently the investigator's claim that he viewed the unauthorized interception of the undercard bout at the Six Pack on May 7, 2011, is all that is required to establish liability (Docket No. 40, p. 3 of 5).

Defendants challenge the summary judgment with evidence, by affidavit, from a witness supporting Defendants' view that the Fight was not being broadcast at the Six Pack on May 7, 2011. This factual record highlights the dispute while providing some substantial basis for assessing the credibility of the parties' competing factual narratives. The parties have shown a factual dispute that would require the Magistrate to make a choice between the parties' differing versions of events. While the Magistrate can make reasonable inferences in favor of the nonmoving party; the

Magistrate cannot engage in the credibility assessment which Plaintiff seeks. Resolution of these conflicting versions of the facts must be decided by the ultimate fact finder.

## VII. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is denied and Defendants' Motion for Summary Judgment is denied.

**IT IS SO ORDERED**.

/s/Vernelis K. Armstrong
United States Magistrate Judge

Date: September 18, 2014